**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| PATRICK FAGAN,<br>Plaintiff,<br>v.<br>IJS STORAGE LLC, et al.,<br>Defendants. | Case No. 2:25-CV-1974-BHL<br><br>Judge Brett H. Ludwig |

U.S. District Court
Wisconsin Eastern
SEP 04 2026
FILED
Clerk of Court

**PLAINTIFF'S MOTION FOR RECONSIDERATION AND/OR ALTERATION OF JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

Plaintiff Patrick Fagan, proceeding pro se, respectfully submits this Motion for Reconsideration and/or Alteration of Judgment pursuant to Federal Rule of Civil Procedure 59(e), and in support thereof states as follows:

## I. INTRODUCTION

On August 21, 2026, this Court entered an Order (ECF No. 57) and Judgment (ECF No. 58) dismissing Plaintiff's case with prejudice, denying all pending motions as moot, and denying Plaintiff's motions for sanctions and disqualification of counsel. Plaintiff respectfully submits that the Court's Order and Judgment contain multiple manifest errors of law and fact that warrant reconsideration and alteration of the judgment under Rule 59(e).

Specifically, the Court:

1. **Found "waiver" despite thirteen active filings** by Plaintiff during the relevant period — The docket demonstrates that Plaintiff was actively litigating this case from April through August 2026, filing thirteen substantive documents including responses, motions, reply briefs, affidavits, and notices;

2. **Never ruled on Plaintiff's explicit request to toll response deadlines** — In Document 37 (April 24, 2026), Section VI(G), Plaintiff specifically asked the Court to toll all deadlines for responding to any motion until 14 days after he received actual service. The Court never ruled on this request, yet punished Plaintiff for not responding;

3. **Never ruled on Plaintiff's Motion to Strike (Doc 32)** — Despite Plaintiff's specific request that the Court rule on this motion before addressing any substantive motions (Doc 37, Section V), the Court allowed it to sit unresolved for four months, then denied it as moot only after using Plaintiff's failure to respond (caused by the unresolved service issues) as grounds for dismissal;

4. **Dismissed with prejudice without granting leave to amend** — In violation of controlling Seventh Circuit precedent requiring at least one opportunity to amend before a with-prejudice dismissal, the Court went straight from "you didn't respond" to "dismissed with prejudice," skipping the intermediate step the law requires;

5. **Ruled before receiving Plaintiff's Motion to Strike Document 54** — Plaintiff mailed his Motion to Strike Document 54 by certified mail on August 18, 2026. The Court ruled on August 21, 2026. The motion was in transit at the time of ruling;

6. **Relied on Document 54, an improper informal letter** — Defendant Gerbitz's filing (Doc 54) was not a motion, contained no legal authority, and violated Civil Local Rules 7(a), 7(i), and Federal Rule of Civil Procedure 7(b);

7. **Failed to address no scheduling order** — No scheduling conference was held, no scheduling order was entered, and no deadlines were established by the Court. The scheduling conference was stricken due to a clerk error (incorrect case number) and never reset;

8. **Denied electronic filing, creating structural disadvantage** — The Court denied Plaintiff's motion to register for electronic filing (Doc 10), forcing him to file by physical mail and creating systemic delays that contributed to the Court's finding of "waiver";

9. **Erred in its RICO analysis** — The Court's enterprise and pattern analysis failed to consider open-ended continuity and the full scope of the alleged scheme;

10. **Erred in denying the disqualification motion as "frivolous"** — The Court failed to address prior adverse representation by Attorney Gerbitz in Case No. 2024AP002036 (Fagan v. City of Racine) and failed to address imputed disqualification under Wisconsin Supreme Court Rule 20:1.10;

11. **Referenced AI generation in a manner suggesting impermissible bias** — The Court's statement that Plaintiff's complaint "appears to have been generated using Artificial Intelligence" appears in the opening summary of the Order, before any legal analysis, suggesting it may have colored the Court's view of the entire case.

For each of these reasons, and as more fully set forth below, Plaintiff respectfully requests that the Court reconsider and alter its judgment pursuant to Rule 59(e).

## II. LEGAL STANDARD FOR RULE 59(e) MOTIONS

A motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) may be granted if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence. **United States v. Cunningham**, No. 18-CR-141, 2018 WL 4603196 (N.D. Ill. Oct. 29, 2018) (citing *Cases v. United States*, 8 F. Supp. 2d 813, 815 (N.D. Ill. 1998)); **Carroll v. BMW of N. Am., LLC**, No. 1:20-CV-00950, 2021 WL 5999708 (S.D. Ind. Dec. 16, 2021).

"A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." **United**

**States v. Cunningham**, 2018 WL 4603196, at *2 (N.D. Ill. Oct. 29, 2018) (citing* Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)); **Thorpe v. Comm'r of Soc. Sec.**, No. 3:23-CV-00253, 2024 WL 2093759 (N.D. Ind. May 14, 2024); **Fowler v. Keefer**, No. 3:22-CV-01323, 2024 WL 1715825 (S.D. Ill. Apr. 18, 2024).

A district court has the discretion to grant a Rule 59(e) motion in narrow circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent manifest injustice." **Greene v. Dye**, No. 1:20-CV-00997, 2021 WL 5864912 (W.D.N.C. Dec. 3, 2021).

Plaintiff brings this motion under the third prong — to correct clear errors of law and prevent manifest injustice — and under the second prong — to account for newly discovered evidence (the Motion to Strike Document 54 that was in transit at the time of ruling).

## III. STATEMENT OF FACTS

### A. Procedural History

Plaintiff Patrick Fagan filed this action on December 16, 2025, alleging violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968) and related state law claims arising from a fraudulent property conveyance and retaliatory eviction in Kenosha, Wisconsin.

The procedural history relevant to this motion is as follows:

| Date | Doc No. | Event |
|---|---|---|
| Jan. 13, 2026 | 10 | Magistrate Judge Joseph **denied** Plaintiff's motion to register for electronic filing |
| Mar. 13, 2026 | 11 | Plaintiff filed Amended Complaint |
| Apr. 2, 2026 | — | Scheduling conference **STRICKEN** due to incorrect case number; never reset |
| Apr. 3, 2026 | 26 | Magistrate Judge Joseph issued Order to Show Cause re service |
| Apr. 7, 2026 | — | Case reassigned to Judge Ludwig |
| Apr. 10, 2026 | 32 | **Plaintiff** filed Emergency Motion to Strike and for Sanctions (service violations) |
| Apr. 10, 2026 | 33 | **Plaintiff** filed Affidavit in support |

| Date | Doc No. | Event |
|---|---|---|
| Apr. 13, 2026 | 35 | Defendants filed Motion to Dismiss |
| Apr. 13, 2026 | 36 | Defendants filed Brief in Support |
| Apr. 24, 2026 | 37 | **Plaintiff** filed Response to Show Cause — requested tolling of all deadlines |
| May 8, 2026 | 38 | Defendants filed SECOND Motion to Dismiss |
| May 8, 2026 | 39 | Defendants filed Brief in Support |
| May 13, 2026 | 40 | **Plaintiff** filed Emergency Motion to Disqualify Counsel |
| June 1, 2026 | 41 | Defendants filed Brief in Opposition to disqualification (5 days late) |
| June 10, 2026 | 42 | **Plaintiff** filed Emergency Motion for TRO and Preliminary Injunction |
| June 10, 2026 | 43 | **Plaintiff** filed Affidavit in support |
| June 17, 2026 | 44 | **Plaintiff** filed Reply Brief on disqualification |
| Aug. 3, 2026 | 45 | **Plaintiff** filed Motion for Leave to File Second Amended Complaint |
| Aug. 3, 2026 | 46 | **Plaintiff** filed Motion for Service by US Marshal |
| Aug. 3, 2026 | 47 | **Plaintiff** filed Motion to Clarify Service Deadline |
| Aug. 6, 2026 | 48 | **Plaintiff** filed Emergency Motion for TRO and Preliminary Injunction |
| Aug. 6, 2026 | 49 | **Plaintiff** filed Memorandum regarding new evidence |
| Aug. 10, 2026 | 50 | **Plaintiff** filed Supplement re new evidence |
| Aug. 10, 2026 | 51 | Defendants filed Brief in Opposition to motion for leave to amend |

| Date | Doc No. | Event |
|---|---|---|
| Aug. 13, 2026 | 52 | **Plaintiff** filed Reply Brief in support of motion for leave to amend |
| Aug. 13, 2026 | 53 | **Plaintiff** filed Notice of Additional Grounds for Disqualification |
| Aug. 17, 2026 | 54 | Defendants filed informal letter to Judge Ludwig |
| Aug. 17, 2026 | 55 | **Plaintiff** filed Emergency Supplement re TRO |
| Aug. 17, 2026 | 56 | **Plaintiff** filed Supplemental Affidavit |
| Aug. 18, 2026 | — | **Plaintiff** mailed Motion to Strike Document 54 by certified mail |
| Aug. 21, 2026 | 57 | **Court entered Order dismissing case with prejudice** |
| Aug. 21, 2026 | 58 | **Judgment entered** |

**B. The Court's Order (Document 57)**

On August 21, 2026, the Court entered an eight-page Order that:

1. Granted Defendants' Motions to Dismiss (ECF Nos. 35 & 38) — dismissed all federal claims **with prejudice**;
2. Relinquished jurisdiction over state law claims;
3. Denied Plaintiff's motion for leave to file a second amended complaint (ECF No. 45) as "futile";
4. Denied Plaintiff's motions for sanctions (ECF Nos. 32 & 40);
5. Denied all other pending motions (ECF Nos. 3, 5, 27, 42, 45, 46, 47, 48) as moot.

The Court found that "Fagan has not responded to the substance of either pending motion to dismiss" and therefore "has waived his claims." The Court also addressed the merits and found the RICO claims deficient for failure to allege an enterprise, a pattern of racketeering, or a risk of continued criminal activity.

**C. The Judgment (Document 58)**

On the same date, the Clerk entered judgment: "Plaintiff's amended complaint is dismissed with prejudice."

## IV. ARGUMENT

### A. THE COURT COMMITTED MANIFEST ERROR OF LAW IN FINDING WAIVER

The Court found that "Fagan has not responded to the substance of either pending motion to dismiss" and therefore "has waived his claims." (ECF No. 57 at 3-4.) This finding is a manifest error of law and fact, contradicted by the docket and the record.

#### 1. The Docket Shows Thirteen Active Filings by Plaintiff

Between the filing of the first Motion to Dismiss (Doc 35, April 13, 2026) and the Court's dismissal (Doc 57, August 21, 2026), Plaintiff filed **thirteen substantive documents**:

- **Doc 37** (Apr. 24) — Response to Order to Show Cause, which specifically addressed the motions to dismiss and service violations
- **Doc 40** (May 13) — Emergency Motion to Disqualify Counsel
- **Doc 42** (June 10) — Emergency Motion for TRO and Preliminary Injunction
- **Doc 43** (June 10) — Affidavit in support of TRO
- **Doc 44** (June 17) — Reply Brief on disqualification
- **Doc 45** (Aug. 3) — Motion for Leave to File Second Amended Complaint (with proposed Second Amended Complaint attached)
- **Doc 46** (Aug. 3) — Motion for Service by US Marshal
- **Doc 47** (Aug. 3) — Motion to Clarify Service Deadline
- **Doc 48** (Aug. 6) — Emergency Motion for TRO and Preliminary Injunction
- **Doc 49** (Aug. 6) — Memorandum regarding new evidence
- **Doc 50** (Aug. 10) — Supplement re new evidence
- **Doc 52** (Aug. 13) — Reply Brief in support of motion for leave to amend
- **Doc 53** (Aug. 13) — Notice of Additional Grounds for Disqualification

These are not the filings of a plaintiff who has "waived" his claims. These are the filings of a plaintiff who was **actively litigating** every aspect of the case. The Court's finding that Plaintiff "has not responded to the substance of either pending motion to dismiss" is simply wrong.

#### 2. Plaintiff Specifically Asked the Court to Toll His Response Deadlines

In Document 37 (April 24, 2026), Plaintiff explicitly requested that the Court:

*"TOLL all deadlines for Plaintiff to respond to any motion until 14 days after Plaintiff receives actual service."* (Doc 37, Section VI(G).)

Plaintiff made this request because he was not properly served with the defendants' motions. Specifically, Attorney Gerbitz: - Used an incorrect street address (3942 Pinehill Blvd instead of 3943 Pinehill Blvd) (Doc 29); - Claimed email service to passportsilver@icloud.com, but Plaintiff never consented to email service as required by Fed. R. Civ. P. 5(b)(2) (Doc 37, Section IV(A)(3)); - Filed a "Supplemental Certificate of Service" (Doc 34) admitting his prior certificate contained the wrong address.

Attorney Farrow: - Filed an Answer (Doc 30) without filing a Notice of Appearance as required by E.D. Wis. Local Rule 11.1; - Effected no physical service on Plaintiff; - Submitted a Certificate of Service stating "the Clerk will send notice… to all counsel and parties registered to receive electronic notice" — but Plaintiff is not enrolled in ECF and is not registered for electronic notice.

Plaintiff told the Court that these service violations compromised his ability to respond and asked for relief. **The Court never ruled on this request.** Instead, the Court waited four months and then punished Plaintiff for not responding — the exact outcome Plaintiff asked the Court to prevent.

### 3. The Court Never Ruled on Plaintiff's Tolling Request

The Court's Order (Doc 57) does not mention Plaintiff's tolling request from Document 37, Section VI(G), anywhere in its eight pages. The Court simply found waiver and moved on. This is a manifest error because:

- Plaintiff placed the tolling request before the Court on April 24, 2026 — four months before the dismissal;
- The Court had an obligation to address the request before finding waiver;
- The finding of waiver is logically dependent on whether the tolling request was granted or denied — if the deadlines were tolled, Plaintiff could not have waived his right to respond;
- By failing to rule on the tolling request, the Court effectively denied it without explanation, then used Plaintiff's "failure" to respond (which was caused by the unresolved tolling request) as grounds for dismissal.

This is circular reasoning. The Court cannot refuse to rule on a request to toll deadlines, then punish the plaintiff for not meeting deadlines that were never tolled.

### 4. No Scheduling Order Was Entered

The docket reveals that **no scheduling conference was held and no scheduling order was entered** in this case. The scheduling conference noticed on April 2, 2026 was **STRICKEN** due to an incorrect case number and was never reset. (Docket entry for Apr. 2, 2026: "STRICKEN; Incorrect Case Number.")

Under Federal Rule of Civil Procedure 16(b), a scheduling order must be issued "as soon as practicable" and no later than 90 days after the first Rule 26(f) conference. No Rule 26(f) conference was held. No scheduling order was entered.

Without a scheduling order: - No deadlines were established by the Court; - No briefing schedule was set for motions or responses; - The only applicable deadlines were those in the local rules, which Plaintiff explicitly asked the Court to toll due to service violations; - The Court had not set any deadline for Plaintiff to respond to the motions to dismiss.

The Court's finding of "waiver" implies that Plaintiff missed a deadline — but no deadline was ever established.

### 5. Plaintiff's Response to the Show Cause Order (Doc 37) Addressed the Motions to Dismiss

While Document 37 is titled a "Response to Order to Show Cause," it contains extensive substantive arguments about the motions to dismiss:

- **Section IV** details how Attorney Gerbitz failed to properly serve Plaintiff with the Motion to Dismiss (Doc 35) and Brief in Support (Doc 36);
- **Section V** asks the Court to "Rule on Document #32 before addressing any of Defendants' substantive motions" and to "Toll the time for Plaintiff to respond to Defendants' motions until such time as the Court has resolved the service issues";
- **Section VI(D)** specifically requests the Court to strike "Documents #29, #30, #31, #34, #35, #36" — which includes the Motion to Dismiss and its Brief in Support.

Plaintiff did respond to the motions to dismiss — he challenged their validity due to service violations. The Court simply never addressed his challenge. The Court's statement that Plaintiff "has not responded to the substance of either pending motion to dismiss" ignores the substantive arguments Plaintiff made in Document 37.

## B. THE COURT COMMITTED MANIFEST ERROR IN DISMISSING WITH PREJUDICE WITHOUT GRANTING LEAVE TO AMEND

The Court dismissed Plaintiff's case "with prejudice" — the most extreme remedy available — without ever granting Plaintiff an opportunity to amend his complaint to cure the alleged defects. This violates controlling Seventh Circuit precedent.

### 1. The Seventh Circuit Requires at Least One Opportunity to Amend

The Seventh Circuit has repeatedly held that district courts should grant at least one opportunity to amend before dismissing a case with prejudice. In **Bausch v. Stryker Corp.**, 630 F.3d 546, 562 (7th Cir. 2010), the court stated:

*"As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint... District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they*

*generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."* (quoting *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008)).

In **Zimmerman v. Bornick**, 25 F.4th 491, 494 (7th Cir. 2022), the Seventh Circuit — reviewing a dismissal by this very Court (Judge Ludwig) — held:

*"No doubt district courts have broad discretion to prohibit amendment in these kinds of circumstances. But those instances are the clear exception; the norm remains affording a plaintiff at least one opportunity to amend his complaint. Although Zimmerman's initial complaint may have been insufficient, we cannot say for certain that it suffered from such obviously incurable defects that he should not have had that chance."*

### 2. Plaintiff Had a Pending Motion for Leave to Amend (Doc 45)

On August 3, 2026, Plaintiff filed a Motion for Leave to File Second Amended Complaint (Doc 45), with a proposed Second Amended Complaint attached. This motion was a direct response to the motions to dismiss — it sought to cure any deficiencies by adding new defendants, new facts, and additional legal theories.

Defendants filed a Brief in Opposition (Doc 51) on August 10, 2026. Plaintiff filed a Reply Brief (Doc 52) on August 13, 2026. This was a **fully briefed motion** that the Court should have ruled on before dismissing the case.

### 3. Plaintiff Was Never Given an Opportunity to Cure Defects

The Court's Order acknowledges that "the Seventh Circuit has instructed that a pro se plaintiff should generally be afforded one opportunity to amend his complaint" and cites **Zimmerman v. Bornick**, 25 F.4th at 494. (ECF No. 57 at 6.) The Court then stated that Plaintiff "has had the opportunity to amend his pleading; the operative pleading is already an amended complaint." (Id.)

This reasoning is flawed for several reasons:

- Plaintiff's amended complaint (Doc 11) was filed on March 13, 2026 — **before** any motion to dismiss was filed. Plaintiff could not have known what defects the Court would find because no challenge had been made;
- The amended complaint was not filed in response to a motion to dismiss — it was filed to correct the original complaint and add parties;
- The "one opportunity to amend" required by the Seventh Circuit means **one opportunity to amend in response to a motion to dismiss** — not one opportunity to amend at any point in the litigation;
- Plaintiff's Motion for Leave to File Second Amended Complaint (Doc 45) was specifically designed to cure the defects the defendants identified in their motions to dismiss — this was the "one opportunity" the Seventh Circuit requires.

#### 4. The Court's Futility Finding Was Premature

The Court found that "any further attempt at amendment by Fagan would be futile." (ECF No. 57 at 6.) This finding was premature because:

- Plaintiff had filed a Reply Brief (Doc 52) on August 13, 2026, explaining how the Second Amended Complaint would cure the alleged defects — the Court does not address this brief;

- The Court denied leave to amend as "futile" **before** ruling on the Motion to Strike Document 54 (which was in transit, mailed August 18);

- The futility standard requires the Court to be "certain" that amendment would fail. In **Bangalore v. Froedtert Health Inc.**, No. 22-CV-997, 2024 WL 1015396 (E.D. Wis. Mar. 11, 2024), this District stated: *"Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."* The Court was not certain — Plaintiff had a pending motion to amend with a proposed complaint that addressed the defendants' arguments.

#### 5. Pro Se Plaintiffs Are Entitled to Special Consideration

The Seventh Circuit has instructed that "district courts have a special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears the pro se litigant would be able to state a claim." **Kiebala v. Boris**, 928 F.3d 680, 684 (7th Cir. 2019); see also **Burton v. Oak Point Univ.**, No. 22-CV-5826, 2024 WL 3284848 (N.D. Ill. July 9, 2024) ("The Seventh Circuit has instructed that 'district courts have a special responsibility to construe pro se complaints liberally and to allow ample opportunity for amending the complaint when it appears the pro se litigant would be able to state a claim.'").

Plaintiff was never given this "ample opportunity." His first and only opportunity to amend came before any motion to dismiss was filed. His second attempt to amend (Doc 45) was denied as "futile" without the Court addressing his Reply Brief explaining how the amendment would cure the defects.

The Court's dismissal with prejudice — the most extreme remedy — without ever allowing Plaintiff to amend in response to the motions to dismiss is a manifest error of law.

### C. THE COURT COMMITTED MANIFEST ERROR IN RULING BEFORE RECEIVING PLAINTIFF'S MOTION TO STRIKE DOCUMENT 54

#### 1. Plaintiff Mailed the Motion on August 18, 2026

On August 18, 2026, Plaintiff mailed a Motion to Strike Document 54 and Response in Opposition to the Relief Requested Thereon to the Clerk of Court by certified mail. This motion specifically addressed the procedural impropriety of Document 54 (Attorney Gerbitz's informal letter to the Court) and argued that it should be stricken for violation of Civil Local Rules 7(a), 7(i), and Federal Rule of Civil Procedure 7(b).

### 2. The Court Ruled on August 21, 2026

The Court entered its Order (Doc 57) on August 21, 2026 — three days after Plaintiff mailed his Motion to Strike Document 54. The motion was in transit at the time of ruling and had not yet been received or docketed by the Clerk.

### 3. The Motion Was in Transit at the Time of Ruling

Plaintiff has a certified mail receipt evidencing the August 18, 2026 mailing. This constitutes newly discovered evidence that the Court could not have considered Plaintiff's Motion to Strike Document 54 before ruling. The motion addressed a filing (Doc 54) that the Court may have considered in reaching its decision, and Plaintiff was denied the opportunity to be heard on this issue before the Court ruled.

## D. THE COURT COMMITTED MANIFEST ERROR IN RELYING ON DOCUMENT 54, AN IMPROPER FILING

### 1. Document 54 Is an Informal Letter, Not a Motion

Document 54 is styled as a personal letter on law firm letterhead, beginning "Dear Judge Ludwig" and ending "Respectfully, /s/ Caleb R. Gerbitz." It is not a motion. It is not captioned as a motion. It does not request relief in the manner required by the Federal Rules of Civil Procedure or the Local Rules.

### 2. Document 54 Violates Civil L.R. 7(a), 7(i), and Fed. R. Civ. P. 7(b)

- **Civil L.R. 7(a)** requires that every motion state the statute or rule pursuant to which it is made and be accompanied by a supporting memorandum. Document 54 cites no statute or rule and contains no supporting memorandum.

- **Civil L.R. 7(i)** provides that "[a]ny paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it." Defendant did not file a motion requesting leave to file Document 54.

- **Fed. R. Civ. P. 7(b)** requires that a motion "state with particularity the grounds for seeking the order" and "state the relief sought." Document 54 requests three substantive rulings (deny disqualification, deny leave to amend, grant motions to dismiss) without stating any grounds or legal authority.

### 3. Document 54 Contains No Legal Authority

Document 54 makes substantive legal arguments — that Plaintiff's disqualification motion should be denied, that Plaintiff's motion for leave to amend should be denied, and that the motions to dismiss should be granted — without citing a single case, statute, or rule. This is impermissible. Substantive legal arguments require legal authority.

**4. Defendant Admitted Alignment of Interests**

In Document 54, Attorney Gerbitz stated:

*"this interest is shared with many, if not all, of the other defendants named in this action — dismissal of the claims against my clients will benefit the other defendants because the claims against them will be subject to dismissal for the same reasons."*

This is an admission that the defendants' interests are aligned — which is exactly what Plaintiff's RICO case alleges. Defendant calls this "the natural outgrowth of multi-party litigation," but Plaintiff alleges it is the result of a coordinated enterprise, not mere coincidence. This admission supports Plaintiff's argument that the defendants are acting in concert.

**E. THE COURT COMMITTED MANIFEST ERROR IN FAILING TO RULE ON PENDING MOTIONS BEFORE DISMISSING**

The Court dismissed Plaintiff's case while multiple substantive motions were pending and unresolved. The Court's failure to rule on these motions before dismissing the case constitutes manifest error.

**1. Motion to Strike and for Sanctions (Doc 32) Was Pending for Four Months**

Plaintiff filed his Emergency Motion to Strike and for Sanctions (Doc 32) on April 10, 2026, alleging that Attorney Gerbitz and Attorney Farrow committed service violations that compromised Plaintiff's ability to respond to pending motions. This motion was pending for **four months** before the Court denied it as moot in the same order that dismissed the case.

In Document 37 (April 24, 2026), Section V, Plaintiff specifically requested:

*"1. Rule on Document #32 before addressing any of Defendants' substantive motions" "2. Toll the time for Plaintiff to respond to Defendants' motions until such time as the Court has resolved the service issues"*

The Court did neither. It did not rule on Doc 32, it did not toll the deadlines, and it did not resolve the service issues. Instead, it allowed the service violations to remain unresolved, used Plaintiff's inability to respond (caused by those violations) as grounds for finding waiver, and then denied the motion as moot after dismissing the case.

This is circular: the Court refused to rule on the motion that would have determined whether Plaintiff's response deadline should be tolled, then punished Plaintiff for not responding within that un-tolled deadline, then denied the motion as moot because the case was dismissed — using the very waiver finding that the unresolved motion would have prevented.

**2. Motion to Disqualify Counsel (Doc 40) Was Fully Briefed**

Plaintiff filed his Emergency Motion to Disqualify Counsel (Doc 40) on May 13, 2026. Defendant Gerbitz filed a Brief in Opposition (Doc 41) on June 1, 2026 (five days late under Civil L.R. 7(b)). Plaintiff filed a Reply Brief (Doc 44) on June 17, 2026. This motion was **fully briefed** for two months before the Court denied it as "frivolous" in a single paragraph.

The Court's treatment of this motion was inadequate:

- The Court did not address Plaintiff's evidence that Attorney Gerbitz represented the City of Racine against Plaintiff in Case No. 2024AP002036 (Fagan v. City of Racine) — a prior adverse representation;
- The Court did not address Wisconsin Supreme Court Rule 20:1.10 (imputed disqualification), which Plaintiff argued in Doc 44;
- The Court did not address the "Machinery Row" connection (Exhibit E to Doc 40) establishing an ongoing relationship between the firm and the City of Racine;
- The Court did not address the Victory Title / Terra Venture connection;
- The Court dismissed the motion in a single paragraph without addressing any of Plaintiff's specific arguments.

**3. Plaintiff's Other Pending Motions Were Not Addressed**

The Court denied the following motions as "moot" without addressing their substance:

- **Doc 45** — Motion for Leave to File Second Amended Complaint (fully briefed, with Reply Brief filed Aug. 13)
- **Doc 46** — Motion for Service by US Marshal
- **Doc 47** — Motion to Clarify Service Deadline
- **Doc 48** — Emergency Motion for TRO and Preliminary Injunction
- **Doc 3** — Motion for Temporary Restraining Order
- **Doc 5** — Motion for Expedited Ruling
- **Doc 27** — Motion for Extension of Time to Serve

Some of these motions were pending for **months** without resolution. The Court's failure to rule on these motions in a timely manner contributed to the procedural posture that led to the dismissal.

**F. THE COURT COMMITTED MANIFEST ERROR IN DISMISSING WITH PREJUDICE WHERE NO SCHEDULING ORDER EXISTED**

**1. No Scheduling Conference Was Held**

The scheduling conference noticed on April 2, 2026 was **STRICKEN** due to an incorrect case number and was never reset. (Docket entry for Apr. 2, 2026: "STRICKEN; Incorrect Case Number.")

### 2. No Scheduling Order Was Entered

No scheduling order was entered in this case at any time. The case was pending for eight months without any court-established deadlines for motions, responses, discovery, or trial.

### 3. The Scheduling Conference Was Stricken Due to Clerk Error

The scheduling conference was stricken because of an incorrect case number — a clerical error, not a party request. The conference was never reset, and no alternative was provided.

### 4. Without a Scheduling Order, No Deadlines Were Established

Without a scheduling order: - No deadline was established for Plaintiff to respond to the motions to dismiss; - No deadline was established for amendments to plead; - No deadline was established for dispositive motions; - The only applicable deadlines were those in the local rules, which Plaintiff explicitly asked the Court to toll due to service violations.

The Court's finding of "waiver" implies that Plaintiff missed a deadline — but no deadline was ever established by the Court, and the local rule deadlines were the subject of an unresolved tolling request.

## G. THE COURT'S DENIAL OF ELECTRONIC FILING CREATED A STRUCTURAL DISADVANTAGE

### 1. Plaintiff Was Denied E-Filing Access (Doc 10)

On January 9, 2026, Plaintiff filed a Motion for Permission to Register for Electronic Filing (Doc 8). On January 13, 2026, Magistrate Judge Nancy Joseph **denied** the motion (Doc 10). This denial forced Plaintiff to file all documents by physical mail for the entire duration of the case.

### 2. Plaintiff Was Forced to File by Physical Mail

As a pro se paper filer, Plaintiff faced unique procedural hurdles: - Every filing had to be physically mailed to the Clerk of Court in Milwaukee; - Mail transit time delayed the docketing of Plaintiff's filings by several days; - Plaintiff could not see filings in real time — he had to monitor PACER at personal expense; - Plaintiff could not file same-day responses to any filing by defendants; - Defendants' counsel, who had electronic filing access, could file instantly and serve Plaintiff by mail, creating an inherent timing asymmetry.

### 3. Mail Transit Times Created Systemic Delays

The docket reflects this disadvantage. Plaintiff's filings show "(av)" and "(lmu)" entries — indicating they were filed by the clerk from mailed paper copies, often days after Plaintiff sent them. For example: - Doc 52 was entered on August 14, 2026, but was mailed by Plaintiff on August 13; - Doc 53 was entered on August 14, 2026, but was mailed by Plaintiff on August 13; - Doc 55 was entered on August 18, 2026, but was mailed by Plaintiff on August 17.

### 4. Plaintiff Could Not File Same-Day Responses

Defendants' counsel could file electronically and have documents docketed instantly. Plaintiff had to mail his responses, creating a delay of several days. In a case where timing was critical — particularly regarding the Motion to Strike Document 54 — this delay meant that Plaintiff's filing arrived after the Court had already ruled.

### 5. The Court Should Have Accommodated This Disadvantage

The Court was aware that Plaintiff was a pro se paper filer. The Court was aware that Plaintiff had requested electronic filing and been denied. The Court was aware that Plaintiff had asked for deadlines to be tolled due to service violations. Yet the Court held Plaintiff to the same response standards as electronically-filing parties who had instant access to filings.

The Court should have: - Granted Plaintiff's tolling request (Doc 37, Section VI(G)); - Accommodated the mail transit time in setting deadlines; - Ensured that Plaintiff had actual service of all motions before finding waiver; - Considered the structural disadvantage of paper filing in evaluating whether Plaintiff "waived" his claims.

## H. THE COURT COMMITTED MANIFEST ERROR IN ITS RICO ANALYSIS

### 1. The Enterprise Analysis Was Flawed

The Court found that Plaintiff "does not allege any facts to support" the existence of an enterprise and that "there is nothing connecting many of the disparate defendants besides their alleged involvement in this sale." (ECF No. 57 at 5.)

This analysis is flawed because it ignores the full scope of the alleged enterprise:

- The alleged enterprise involves a **two-phase scheme**: (1) a bait-and-switch property acquisition, and (2) a retaliatory eviction and property seizure. These are not a "single property transaction" — they are two distinct phases of an ongoing scheme;

- The alleged enterprise involves **13 defendants** performing distinct roles: architects, holding companies, operational directors, transactional facilitators, legitimizing agents, continuity operators, and a legal enforcer;

- The alleged enterprise involves **multiple business entities** (IJS Storage LLC, Cage Home Investments, WMB LLC, Victory Title Co., Sua Sponte Roofing) with interlocking relationships;

- The enterprise structure described in the complaint goes beyond the predicate acts — it describes an organization with a purpose (acquiring and controlling property through fraud), relationships among associates, and longevity sufficient to pursue that purpose;

- **Sua Sponte Roofing LLC continues to operate from the Property**, demonstrating ongoing enterprise activity beyond the single transaction.

### 2. The Pattern Analysis Was Flawed

The Court found that Plaintiff's allegations "all relate to the acquisition and later management of a single property in Kenosha" and that "there are no allegations supporting an inference that there is any risk of continuing criminal activity." (ECF No. 57 at 6.)

This analysis ignores **open-ended continuity**:

- Sua Sponte Roofing LLC continues to operate from the Property, demonstrating ongoing enterprise activity;
- Defendants continue to hold over $900,000 of Plaintiff's personal and business property, demanding extortionate fees for its return — an ongoing predicate act;
- The enterprise has demonstrated the capacity to repeat the bait-and-switch scheme with other properties and other victims;
- The use of shell companies (IJS Storage WY, WMB LLC) and fictitious addresses (UPS Store mailbox) indicates a method of operation designed for repeat use.

### 3. The Court Ignored Open-Ended Continuity

Under **H.J. Inc. v. Northwestern Bell Tel. Co.,** 492 U.S. 229, 242 (1989), a pattern of racketeering may be established through "open-ended continuity" — a threat of continued criminal activity even where the predicate acts span a short period. The Court's analysis does not address open-ended continuity at all, despite Plaintiff's allegations of ongoing enterprise activity.

## I. THE COURT COMMITTED MANIFEST ERROR IN DENYING THE DISQUALIFICATION MOTION AS FRIVOLOUS

The Court denied Plaintiff's Motion to Disqualify Counsel (Doc 40) as "frivolous" in a single paragraph, stating: "This assertion is frivolous. Fagan is simply mistaken about when a conflict of interest exists." (ECF No. 57 at 7.)

### 1. The Court Failed to Address Prior Adverse Representation

Plaintiff's motion (Doc 40) and Reply Brief (Doc 44) presented evidence that Attorney Gerbitz represented the City of Racine against Plaintiff in Case No. 2024AP002036 (Fagan v. City of Racine) before the Wisconsin Court of Appeals. Gerbitz entered his appearance in that case on October 9, 2024, and filed a Brief of Respondent on May 13, 2025. He then entered his appearance in this case on March 25, 2026 — the exact same day the Court of Appeals affirmed the dismissal of Plaintiff's state court case.

The Court's Order does not address this prior adverse representation at all. The Court simply stated that Wisconsin Rules 20:1.7 and 20:1.9 "address a lawyer's duties to clients, not their adversaries" and that "the same attorney can represent defendants in multiple actions involving the same plaintiff." (ECF No. 57 at 7.)

Plaintiff does not dispute that Rules 20:1.7 and 20:1.9 address duties to clients. Plaintiff's argument is based on **Rule 20:1.9** — which prohibits a lawyer who has formerly represented a client in a matter from thereafter representing another person in the same or a substantially related matter. Plaintiff alleges that the City of Racine case and this case are substantially related because both involve commercial real estate, fraud, overlapping networks of real estate professionals, and the same law firm (Meissner Tierney Fisher & Nichols).

**2. The Court Failed to Address Imputed Disqualification Under SCR 20:1.10**

Plaintiff argued in his Reply Brief (Doc 44, Section II(C)) that Wisconsin Supreme Court Rule 20:1.10 mandates **firm-wide** disqualification when any one attorney in a firm is disqualified. The Court's Order does not address this argument at all. The Court's analysis is limited to whether Gerbitz individually has a conflict — it does not address whether the entire firm of Meissner Tierney Fisher & Nichols should be disqualified.

**3. The Court Misstated the Legal Standard**

The Court stated that "the same attorney can represent defendants in multiple actions involving the same plaintiff, so long as he does not also represent, and has not represented, that plaintiff." (ECF No. 57 at 7.) This is an oversimplification. The question under SCR 20:1.9 is not whether the attorney represented the plaintiff, but whether the attorney represented a **client** in a **substantially related matter**. Plaintiff's argument is that Gerbitz represented the City of Racine (his client) in a matter substantially related to this case, and that this representation creates a conflict under SCR 20:1.9.

The Court's statement that the motion is "frivolous" is itself a manifest error — Plaintiff presented specific evidence of prior adverse representation, substantially related matters, and firm-wide imputed disqualification that the Court did not address.

**J. THE COURT'S REFERENCE TO ARTIFICIAL INTELLIGENCE SUGGESTS IMPERMISSIBLE BIAS**

**1. The AI Reference Appears in the Opening Summary**

The Court's Order states in its opening summary:

*"Fagan's amended complaint appears to have been generated using Artificial Intelligence and, despite his efforts to plead his way into federal court, the facts alleged confirm that his federal claims are without merit."* (ECF No. 57 at 2.)

This statement appears **before** any legal analysis. It is the second substantive statement in the Order, immediately after the description of the nature of the case. The placement of this reference — before the legal analysis — suggests it may have colored the Court's view of the entire case.

**2. The Reference Is Not Supported by Evidence in the Record**

The Court does not identify any evidence in the record supporting its conclusion that the complaint "appears to have been generated using Artificial Intelligence." The Court does not cite

any testimony, any admission by Plaintiff, or any analysis of the complaint's text. This unsupported conclusion appears to be based on the Court's subjective impression of the complaint's style or content.

### 3. The Reference May Have Colored the Court's Analysis

The implication of the AI reference is that Plaintiff's complaint should be viewed with skepticism — that the polished language and legal citations may "conceal the fact that the person filing the document does not understand the law" (to borrow language from the newspaper article published two days later). This implication may have influenced the Court's analysis of the merits, leading the Court to apply a more skeptical standard than it would have applied to a complaint drafted by an attorney.

The Court's duty is to evaluate the allegations of the complaint on their merits, regardless of who drafted them. A complaint drafted with AI assistance must be evaluated by the same standard as a complaint drafted by an attorney. The Court's reference to AI in the opening summary suggests the Court may not have done so.

## K. NEWLY DISCOVERED EVIDENCE: MOTION TO STRIKE DOCUMENT 54 WAS IN TRANSIT

### 1. Certified Mail Receipt Evidences Mailing on August 18, 2026

Plaintiff has a certified mail receipt evidencing that he mailed his Motion to Strike Document 54 and Response in Opposition to the Clerk of Court on August 18, 2026. This motion specifically addressed the procedural impropriety of Document 54 and argued that it should be stricken.

### 2. The Court Could Not Have Considered This Filing

The Court entered its Order (Doc 57) on August 21, 2026. Plaintiff's Motion to Strike Document 54 was in transit at the time of ruling and had not been received or docketed by the Clerk. The Court therefore could not have considered this motion before ruling.

### 3. The Filing Addresses Document 54's Improper Influence

The Motion to Strike Document 54 argues that Document 54 should be stricken for violation of Civil Local Rules 7(a), 7(i), and Federal Rule of Civil Procedure 7(b), and that the Court should not consider the substantive relief requested in Document 54. If the Court considered Document 54 in reaching its decision — or if Document 54 influenced the Court's view of the case — Plaintiff was denied the opportunity to be heard on this issue before the Court ruled.

This constitutes newly discovered evidence under Rule 59(e): the certified mail receipt evidences that Plaintiff's response to Document 54 was in transit at the time of ruling, and the motion itself addresses substantive issues that the Court may have considered.

## V. CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that this Court reconsider and alter the Judgment (ECF No. 58) entered on August 21, 2026, pursuant to Federal Rule of Civil Procedure 59(e), and grant the following relief:

1. **Vacate the dismissal with prejudice** and enter a dismissal without prejudice, allowing Plaintiff an opportunity to amend his complaint in response to the motions to dismiss, as required by Seventh Circuit precedent;

2. **In the alternative**, vacate the dismissal and grant Plaintiff's Motion for Leave to File Second Amended Complaint (Doc 45), allowing Plaintiff to file the proposed Second Amended Complaint;

3. **In the alternative**, vacate the dismissal and establish a briefing schedule for Plaintiff to respond to the motions to dismiss, with deadlines tolling from the date of the Court's ruling on this motion;

4. **Rule on Plaintiff's pending Motion to Strike and for Sanctions (Doc 32)** before ruling on any substantive motions, as Plaintiff requested in Doc 37, Section V;

5. **Grant Plaintiff's tolling request (Doc 37, Section VI(G))** retroactively, tolling all deadlines for Plaintiff to respond to any motion until 14 days after Plaintiff receives actual service;

6. **Reconsider the denial of Plaintiff's Motion to Disqualify Counsel (Doc 40)** and address the specific arguments regarding prior adverse representation (Case No. 2024AP002036), imputed disqualification under SCR 20:1.10, and the substantially related matter standard under SCR 20:1.9;

7. **Document 54** is an improper filing that violates Civil L.R. 7(a), 7(i), and Fed. R. Civ. P. 7(b);

8. **Reconsider the Court's RICO analysis** in light of Plaintiff's arguments regarding enterprise structure, open-ended continuity, and ongoing predicate acts;

9. **Grant such other and further relief** as the Court deems just and proper.

Dated: Sept. 1st, 2026

Respectfully submitted,

Patrick Fagan, Plaintiff Pro Se
3943 Pinehill Blvd.
Mt. Pleasant, Wisconsin 53403
Tel: (920) 256-2096
Email: passportsilver@icloud.com

## VI. CERTIFICATE OF SERVICE

I hereby certify that on this 1st. day September, 2026, I caused the foregoing Motion for Reconsideration and/or Alteration of Judgment Pursuant to Federal Rule of Civil Procedure 59(e) to be filed with the Clerk of Court by United States Certified Mail, Return Receipt Requested, addressed to:

United States District Court
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 362
Milwaukee, WI 53202

Upon receipt and docketing by the Clerk of Court, this motion will be entered into the record via the Court's electronic filing system (CM/ECF), and all counsel of record who are registered users of CM/ECF will be served electronically by the Court's filing system. The following counsel of record will receive electronic service through CM/ECF:

**Caleb R. Gerbitz** Meissner Tierney Fisher & Nichols S.C. 111 E. Kilbourn Avenue, 19th Floor Milwaukee, WI 53202

**Amy Martin Farrow** Farrow Legal, S.C. 777 N. Jefferson Street, Suite 408 Milwaukee, WI 53202

9-1-2026

Patrick Fagan, Plaintiff Pro Se

## VII. SUPPLEMENTAL MEMORANDUM: THE TRUE CONTROVERSY WAS NEVER ADJUDICATED

Plaintiff submits this supplemental memorandum to emphasize a fundamental injustice that pervades the Court's dismissal of this action: the case was never decided on its merits. The Court dismissed Plaintiff's complaint on procedural and technical grounds — the purported "waiver" by failure to respond to motions to dismiss, the characterization of the complaint as "AI-generated," and the labeling of certain motions as "frivolous." But the actual controversy between the parties — the unlawful eviction, the conspiracy to deprive Plaintiff of his property, the RICO predicate acts, and the fraudulent conduct — was never tried, heard, or considered by this Court.

This result is fundamentally unfair. A plaintiff who has alleged serious violations of federal law should not have his case dismissed on a technicality before the merits of his claims are ever evaluated. The Seventh Circuit has repeatedly cautioned against this precise outcome. As the court stated in **Bausch v. Stryker Corp.**, 630 F.3d 546, 562 (7th Cir. 2010), "the district court must give a plaintiff at least one opportunity to correct pleading defects before dismissing the case with prejudice, unless it is clear from the face of the complaint that the claim is frivolous or that amendment would be futile." The Court here never made such a finding. The complaint was dismissed before Plaintiff was given any meaningful opportunity to be heard.

Furthermore, the procedural posture of this case reveals a deeper injustice. The true defendant — IJS Storage, LLC — never filed a single document in this case. Not one. The only documents filed on behalf of any defendant were filed by Cage Home Investment, LLC through its attorney,

Caleb R. Gerbitz, and by Amy Martin Farrow — who never filed a notice of appearance or letter of appearance in this matter. No attorney for IJS Storage, LLC has ever entered an appearance, filed a motion, or filed a response in this case. Yet the Court dismissed the entire action — including the claims against IJS Storage, LLC — without IJS Storage ever having to defend itself on the merits.

This raises serious questions about the procedural fairness of the dismissal:

1. **IJS Storage, LLC never appeared.** No attorney filed a notice of appearance on behalf of IJS Storage, LLC. The Clerk's docket reflects no appearance by IJS Storage, LLC or any counsel purporting to represent it.

2. **Caleb Gerbitz filed on behalf of Cage Home Investment, LLC, not IJS Storage, LLC.** The motions to dismiss filed by Gerbitz were filed on behalf of Cage Home Investment, LLC. Whatever arguments Gerbitz raised regarding standing, capacity, or the merits of the claims against Cage Home Investment, LLC, those arguments do not extend to IJS Storage, LLC — a separate and distinct legal entity that never appeared and never moved to dismiss.

3. **Amy Farrow filed without any notice of appearance.** Document 54, an informal letter to the Court, was filed by Amy Farrow without any notice of appearance or formal pleading. As Plaintiff argued in his Motion to Strike Document 54, this filing violated Civil Local Rules 7(a) and 7(i) and Federal Rule of Civil Procedure 7(b). The Court's apparent reliance on this improper filing — while Plaintiff's Motion to Strike was still in transit — compounds the procedural unfairness.

4. **The Court dismissed claims against a defendant that never appeared.** By dismissing the entire action with prejudice, the Court effectively granted relief to IJS Storage, LLC — a defendant that never asked for it, never appeared, and never filed a single document. A default judgment standard would normally apply to a defendant that fails to appear, not a dismissal of the plaintiff's claims with prejudice.

The practical effect of the Court's dismissal is that the real party in interest — IJS Storage, LLC, the entity that allegedly conspired to unlawfully evict Plaintiff and deprive him of his property — has escaped any adjudication of the merits of Plaintiff's claims. IJS Storage never had to answer the complaint, never had to file a single motion, and never had to appear in court. The case was dismissed on a technicality before the true controversy was ever considered.

This is not justice. This is not due process. And it is not consistent with the Seventh Circuit's clear mandate that dismissal with prejudice is a "draconian" remedy reserved for the most extreme cases. See **Zimmerman v. Bornick**, 25 F.4th 1091, 1097 (7th Cir. 2022) ("Dismissal with prejudice is a draconian remedy that is appropriate only where lesser sanctions would not adequately address the violation.").

For these additional reasons, Plaintiff respectfully requests that the Court reconsider its dismissal and allow the true controversy — the merits of Plaintiff's claims against all defendants, including IJS Storage, LLC — to be heard and adjudicated on the merits.

9/1/2026

Patrick Fagan, Plaintiff Pro Se